UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Charles W. Walker, Jr.
and Janette Walker</u>

    v.                                        Civil No. 11-cv-382-JD

<u>Segway Inc.</u>


SEALED ORDER


    Charles W. Walker, Jr. and Janette Walker, who are husband and wife, bring product liability claims against Segway Inc. that arose from injuries Charles Walker sustained when he fell while riding a Segway Human Transporter ("Segway HT").  The Walkers move to compel Segway to produce documents pertaining to complaints, claims, accidents, and injuries involving Segway HTs.  Segway objects to the motion.


Standard of Review

    "A party may serve on any other party a request within the scope of Rule 26(b): (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . items in the responding party's possession, custody, or control," including documents, data, and data compilations.  Fed. R. Civ. P. 34(a)(1)(A).  "Unless otherwise limited by court order, . . . [p]arties may obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . ."  Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Id.

The response to a Rule 34 request must address each item or category of items requested and state either that the items will be produced or state an objection, including the reasons.  Fed. R. Civ. P. 34(b)(2).  "[G]eneral or boilerplate objections, offered without explanation, may constitute a waiver of the responding party's right to object."  Howard v. Segway, Inc., 2013 WL 869955, at *3 (N.D. Okla. Mar. 7, 2013) (citing cases).  Therefore, an appropriate objection to a Rule 34 request must state the objection with specificity and explain how that objection relates to the requested documents.  D.J.'s Diamond Imports, LLC v. Brown, 2013 WL 1345082, at *6 (D. Md. Apr. 1, 2013); Powerhouse Licensing, LLC v. CheckFree Servs. Corp., 2013 WL 1209971, at *3 (E.D. Mich. Mar. 25, 2013); Silicon Knights, Inc. v. Epic Games, Inc., --- F. Supp. 2d ---, 2012 WL 6809721, at *26 (E.D.N.C. Nov. 7, 2012); Dolarian Capital, Inc. v. SOC, LLC, 2012 WL 4026818, at *2 (E.D. Cal. Sept. 12, 2012); Kelley v.

Bd. of Educ. of City of Chicago, 2012 WL 1108135, at *2 (N.D. Ill. Apr. 2, 2012).

"[A] party may move for an order compelling disclosure or discovery . . ." when an opposing party provides an "evasive or incomplete disclosure" in response to a request to produce documents. Fed. R. Civ. P. 37(a)(1); 37(a)(3)(B); & 37(a)(4). In this district, the party moving to compel production of requested documents bears the burden of showing that the information he or she seeks is relevant for purposes of discovery. See Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134, 136 (D.N.H. 2005). In response, the party opposing disclosure based on privilege bears the burden of showing that the privilege applies. See Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 17 (1st Cir. 2012). If that burden is met, the party moving to compel must show that an exception to the privilege applies. Id.

## Background[1]

Charles Walker purchased a Segway HT, series I-167, in 2003. On July 8, 2006, Walker was riding the Segway when it stopped suddenly, throwing Walker over the handlebars. He struck his

---

[1] The background information is taken from the Walkers' complaint and the parties' memoranda in support of and opposing the motion to compel.

head, face, and hand on the pavement which caused permanent injury to his hand and a closed head injury. Walker has a permanent disability because of his injuries.

The Walkers brought suit on August 3, 2011. They allege that Segway negligently designed, manufactured, and sold the Segway HT that Charles Walker was riding at the time of the accident. They also allege a strict product liability claim, which includes an allegation that the Segway HT lacked an adequate warning. Their third claim is that Segway breached the implied warranty of fitness because the Segway HT was not fit for its ordinary use or its intended use.

Segway maintains an "incident response team" that is responsible for "tracking and coordinating investigation of reported injuries." Def. Obj. at 5. Segway's legal department also keeps information about complaints that is entered onto a spreadsheet from incident intake forms. Additional documents and information about each incident are kept in subfolders. Since 2008, Segway has also kept records of "service anomalies" which are reported incidents or complaints that do not involve injuries.

A paralegal at Segway, Roxanne Lamonde, is part of the incident response team. During her deposition, Lamonde described the file that she maintains of incidents that have occurred on a

Segway device.  Counsel for the Walkers represents that Lamonde testified during her deposition that Segway has 500 to 550 reports of prior accidents on Segway HTs and that it would not be difficult for her to obtain a copy of the document with those reports which include the person's name, the serial number and model of the machine, and a description of the incident.

The Walkers propounded requests for production of documents dated May 18, 2012.  Segway objected to many of them in its responses on June 28, 2012.  Requests numbered 8, 9, 10, 11, 12, 13, 14, and 15 asked, among other things, for "all documents relating to or that otherwise document" accidents, claims, injuries, suits, loss of control by the rider, and other problems while riding a Segway HT, of which Segway was aware, that occurred between January 1, 2004, and the present.  Segway objected to Request 8, which asked for documents relating to accidents, claims, and injuries after January 1, 2004, on the grounds that the request was "vague and ambiguous, overly broad, unduly burdensome, unlimited in time and scope and not likely to lead to the discovery of admissible evidence."  As to Requests 9, 10, 11, 12, 13, 14, and 15, Segway objected on the same grounds and added in boilerplate fashion that each request is "not reasonably particularized or defined," "assumes facts that have not been established and therefore lacks foundation," and "seeks

information protected by the attorney-client privilege and/or work-product doctrine."

Requests 39, 50, and 51 ask for documents related to Segway's procedures and methods for handling complaints about the Segway HT.  The Walkers omitted the page with Segway's response to Request 39.  Segway objected to Requests 50 and 51 on the same grounds: "The request is overly broad, vague and ambiguous, and unlimited in time and scope.  The request seeks information that has been prepared in anticipation of litigation, is subject to the attorney-client privilege, and not discoverable."  In response to Request 50, Segway added: "Consistent with this objection and privilege, Segway is withholding documents Bate stamped Segway-Walker-042612-052628."  Segway also produced a privilege log that identifies four categories of documents that were withheld based on the work product doctrine.

The Walkers' counsel contacted Segway's counsel in September of 2012 to address Segway's responses and failure to produce many of the requested documents.  Segway continued to assert its objections.  Counsel exchanged letters in October and November of 2012 that did not resolve the discovery dispute, although Segway provided a privilege log that listed four items which Segway asserted were protected by the work product doctrine.

After taking depositions of Segway employees and former employees, the Walkers' counsel drafted a motion to compel production and sent a copy to Segway's counsel on February 4, 2013. In a telephone conversation on February 8, Segway's counsel agreed to produce certain documents sought in the motion to compel but refused to produce documents about prior incidents, accidents, injuries, and service anomalies.

## Discussion

In their motion, the Walkers seek to compel Segway to produce copies of documents in response to the eleven requests for all documents relating to accidents, incidents, injuries, or service anomalies involving Segway HTs and Segway's procedures for documenting and investigating complaints. Segway objects to the motion to compel, contending that the Walkers have not shown that all of the accidents, incidents, injuries, and service anomalies in the requested documents are relevant to the Walkers' claims. Segway also asserts the protection of the work-product doctrine.[2]

---

[2]Segway is familiar with the issues raised here because it has faced the same issues in other federal cases. See, e.g., Howard, 2013 WL 869955; Bennett v. Segway, Inc., No. 11-cv-09-MR-DLH, slip op. (W.D.N.C. Oct. 19, 2011). The Walkers' counsel also notes two cases against Segway with similar discovery disputes in California state courts. In all four cases, Segway

A. <u>Relevance</u>

When a party objects to discovery on the basis of relevance, the court first considers whether the requested discovery is relevant to a claim or defense, and if not, whether good cause exists to authorize discovery that is relevant to the subject matter of the action. <u>In re Subpoena to Witzel</u>, 531 F.3d 113, 118 (1st Cir. 2008). Relevance for purposes of Rule 26(b)(1) is broad because "to be discoverable, information need only appear to be reasonably calculated to lead to the discovery of admissible evidence." <u>Remexcel Managerial Consultants, Inc. v. Arlequin</u>, 583 F.3d 45, 52 (1st Cir. 2009) (internal quotation marks omitted).

The Walkers state that their theory of liability is "that the Segway HT device is not safe as a human transporter, that it makes unexpected motions under a variety of circumstances that cause people to fall, and that there are alternative designs with comparable utility and substantially less risk." Motion at 7.

---

was ordered to produce further responses or the documents the plaintiffs requested. Notably, in <u>Howard</u>, the court concluded that Segway had waived its objections to the plaintiff's requests because Segway's responses were general boilerplate without "specific reference to the requests at hand, and by not identifying what portions of requests were objectionable . . . ." 2013 WL 869955, at *3. The Walkers, however, do not contend that Segway waived its objections by responding with general boilerplate objections.

They contend that they need the information they seek from Segway because all falls from Segway HTs could provide information about the dangers of the Segway HT.  The Walkers anticipate that their expert witness, Professor William Singhose, Ph.D., will use information about Segway HT accidents to complete his hazard analysis of the Segway HT.  They also contend that the information about prior Segway HT accidents and injuries is relevant to Segway's continuing duty to warn about the dangers of the Segway HT and to Segway's negligence.

Segway argues that the Walkers' requests are overly broad because the Walkers have not shown that any other accidents and injuries involving other models of the Segway HT and different circumstances have any causal connection to Charles Walker's accident.  Instead, Segway contends, the Walkers are limited to requesting information about incidents or complaints that "share similarity with Mr. Walker's incident."[3]  Segway concedes that incidents involving I-series Segway HTs with a reported loss of

---

[3] Segway also objects to providing information that Dr. Singhose will use in his hazard analysis, which Segway contends will include a variety of situations that are unrelated to Charles Walker's accident.  Segway contends that the broad hazard analysis proposed by Dr. Singhose would be unfairly prejudicial to Segway.  The nature of Dr. Singhose's analysis and the admissibility of any of his opinions are not the subjects of the current motion and will not be decided here.

traction and the rider falling forward are sufficiently relevant to be discoverable.[4]

In addition, the information Segway provides in support of its objection suggests that the various models of Segway HTs use the same operating principles.  Specifically, the self-balancing design or pitch balance, which is apparently pertinent to Charles Walker's fall, is the same concept for all Segway HTs.  The Walkers represent that Segway provides the same user manual, the Rider's Guide, for all models of Segway HTs.  The Walkers also note that in opposing their motion Segway relied on the declaration of Jon M. Stevens, Segway's Director of Dynamics, Systems & Software Engineering, in which Stevens examined fourteen accidents at an arboretum, involving Segway HTs, but noted only four that were different from Charles Walker's accident.

The Walkers have shown that their requests for documents relating to other accidents, injuries, incidents, and service anomalies, as propounded in Requests 8, 9, 10, 11, 12, 13, 14, 15, 39, 50, and 51 are sufficiently relevant to their claims or likely to lead to admissible evidence to be allowed under Rule

---

[4]Segway states that it is willing to disclose those documents but, apparently, has not done so yet.  Segway's failure to produce at least those documents is unexplained.

26(b)(1).  There appears to be no reason to limit disclosure to accidents that occurred on the same model of Segway HT.  Although the circumstances of other accidents and incidents may preclude the use of that information in motion practice or at trial, relevance and admissibility for those purposes will not be addressed or resolved in the context of a discovery dispute.

B.   <u>Work Product Doctrine</u>

"Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ." Fed. R. Civ. P. 26(b)(3)(A).  The work product doctrine will not preclude discovery if the information sought is discoverable under Rule 26(b)(1) and the party seeking discovery "shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  <u>Id.</u>  "When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed . . . ."  Fed. R. Civ. P. 26(b)(5)(A).

The protection of the work product doctrine is greatest for "mental impressions, conclusions, opinions, or other legal theories" of a party's attorney or representative but diminished as to facts and other matters prepared in anticipation of litigation.  Vicor, 674 F.3d at 18 (internal quotation marks omitted).  The work product doctrine does not apply to materials that were prepared in the ordinary course of business, that would have been prepared despite the possibility of litigation, or that merely relate to an issue that might be litigated.  United States v. Textron Inc., 577 F.3d 21, 29-30 (1st Cir. 2009).

In support of its invocation of the protection of the work product doctrine, Segway states that all of the documents the Walkers requested were created or obtained by the incident response team which was initially headed by Attorney Jane Davison and then by Paralegal Roxanne Lamonde.  Segway asserts that the team was created because of the prospect of litigation but cites no support for that assertion.

In the "Factual Background" section of its memorandum, Segway states that the incident response team "is responsible for tracking and coordinating investigation of reported injuries." Davison, who initially headed the incident response team, testified in her deposition that Segway had three purposes for the incident response team:

>       The first was, in the early years especially, we
> wanted a process to receive information about how
> riders were using the Segway Personal Transporter
> product and to be able to give that information to the
> engineers so that they could evaluate it and have an
> ongoing relationship to evolve and improve the product.
>       The second purpose was to be able to report to the
> CPSC that governs the Segway PT product.  There are
> duties of reporting to the CPSC and Segway took those
> duties, and I assume still does, very seriously.  So we
> wanted to have a mechanism to report required
> information.
>       And thirdly was just a matter of practicality, and
> many companies do this, to enhance our risk management
> program so that if somebody fell off a machine, we
> would have an ability to gather the facts as soon as
> possible and analyze those facts for defense purposes.

Doc. 21, Ex. F. at 15-16.  In addition, Segway states that the incident response team tracked "service anomalies," beginning in 2008, and that the service department has had that responsibility since 2010.

Segway has not shown that the information maintained by the incident response team was prepared in anticipation of litigation.  Segway does not argue that the incident intake forms or any of the information prepared and maintained by the incident response team contain the legal opinions or thought processes of Segway's counsel.[5]  Although one reason given for obtaining the information was "defense purposes," Davison explained that the

---

[5]The Walkers appear to concede that documents prepared by Segway's Office of General Counsel for incidents that evolved into litigation are entitled to work product protection.

CPSC also required Segway to obtain and report that information. See Textron, 577 F.3d at 30-31; see also In re Aqua Dots Prods. Liability Litig., 270 F.R.D. 322, 328-29 (N.D. Ill. 2010). Therefore, the information that the Walkers requested would have been prepared regardless of any defense purpose. Further, it appears that Segway would have sought the information for its own business purposes even if the CPSC did not require reports on accidents and incidents involving the Segway HTs.

Segway contends that the incident intake forms, if disclosed, should be redacted to protect the names, addresses, and telephone numbers of its customers. The Walkers do not appear to object to that proposal. Although the parties have a confidentiality agreement, redaction as Segway proposes is not unreasonable in the absence of any developed argument that the identifying information on the forms is needed.

## Conclusion

For the foregoing reasons, the plaintiff's motion to compel (document no. 16) is granted. The defendant shall produce to the plaintiffs the information requested in the plaintiffs' document requests dated May 18, 2012, and numbered 8, 9, 10, 11, 12, 13, 14, 15, 39, 50, and 51 **within thirty days of the date of this order**.

The plaintiffs shall file a motion, with appropriate support including billing records, for an award of their reasonable expenses incurred in filing the motion to compel **within fifteen days of the date of this order.** See Fed. R. Civ. P. 37(a)(5)(A). The defendant shall have **fourteen days** to file a response to the motion.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

April 17, 2013

cc: Ronald E. Cook, Esquire
    Ralph Suozzo, Esquire
    Mark Venardi, Esquire